No. 10,776.

FIRST NATIONAL BANK OF CENTER *v.* MONTE VISTA HARDWARE CO., ET AL.

Decided May 5, 1924. Rehearing denied June 2, 1924.

Controversy between judgment creditor and mortgagee over the right to personal property. Judgment for creditor.

### *Reversed.*

1. EXECUTION—*Return Day—Lien.* In Colorado an execution is returnable 90 days after it is issued, and no lien is created by a levy after the expiration of that period.

2. *Levy—Judgment Debtor Custodian.* Leaving the property

levied upon under execution with the judgment debtor, does not of itself invalidate the levy, and while seizure under the writ must be actual or constructive, physical seizure is not essential, it being sufficient if the property levied upon is within the officer's view and subject to his control at the time, and he manifests dominion over it.

3.      *Delay in Levy—Loss of Lien.*  An execution is a lien upon the personal property of the judgment debtor from the time of the delivery of the writ to the officer for service, but the lien may be lost by an act of the judgment creditor indicating that the writ is being used as security and not for satisfaction of the judgment.

4.      *Delay in Levy—Presumption.*  Where levy of an execution was delayed for 90 days, in the absence of any explanation for the delay, it is presumed that it was caused by direction of the judgment creditor.

5.      *Chattel Mortgage—Lien.*  Failure of a judgment creditor to cause an execution to be served until after the expiration of 89 days from date of issue, subordinates the execution lien to that of a chattel mortgage given by the judgment debtor in possession, 62 days after the sheriff received the execution, and 28 days before an attempted levy thereunder.

*Error to the District Court of Rio Grande County, Hon. Jesse C. Wiley, Judge.*

Mr. JOHN I. PALMER, for plaintiff in error.

Mr. JESSE STEPHENSON, for defendants in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THIS is an action by the plaintiff bank against the defendant hardware company for the conversion of the bank's personal property.  The controversy is between a later mortgagee and a prior judgment creditor, each claiming the same property.  There was a judgment for the defendant and the mortgagee bank is here with its writ of review. The defendant hardware company recovered a judgment against Fawver Brothers May 2, 1922.  On that date an execution was issued and delivered to the sheriff.  July 3,

1922, Fawver Brothers gave a chattel mortgage to the plaintiff bank upon certain live stock, including work horses, and farming implements used by the mortgagors on their farm. The bank had no actual knowledge or notice of the execution and there were no facts or circumstances putting it on inquiry. The mortgage was duly acknowledged and recorded on the day of its execution and it provided that possession should remain with the mortgagors until default. In this state an execution is made returnable ninety days after it is issued. The sheriff held this execution from May 2 until July 31, 1922, a period of ninety days, and late in the afternoon of the ninetieth day he appeared with his writ at the farm of the Fawver Brothers, judgment debtors, in view of the property in question and gave to one of the two judgment debtors, whom he appointed as custodian, a written list of the property upon which he claimed to have made the levy to satisfy the judgment, and left the property on the farm in possession of the custodian. There was no physical or manual seizure of any of the property, but it was present on the farm and apparently the sheriff saw it and might have taken possession of it and removed it if he had seen fit to do so, but he chose to leave it with one of the judgment debtors as custodian. He assumed to exercise, and did exercise, dominion over the property with the avowed purpose of holding it to meet the exigencies of the writ. The next day, being ninety-one days after the writ of execution was delivered to him, the sheriff filed an additional list of property that he claimed to have levied upon, which included a number of horses that were not in the first list. In the second list left with the custodian were nine head of work horses. There were fifteen horses at the farm but there was no identification of the nine the sheriff intended to levy upon, or segregation of them from the remaining six.

1. The first contention of plaintiff is that under the facts recited there was not a valid levy. There are decisions that if a sheriff leaves property levied upon in possession of the judgment debtor, the levy is not valid. 2 Freeman

on Executions, p. 1458, § 261. Such is the law in England and some of the states of the Union, but the weight of authority is that leaving the property with the judgment debtor does not of itself invalidate the levy. Seizure under the writ must be either actual or constructive, but physical or manual seizure is not essential. The property levied upon must be within the view of the officer and subject to his control at the time and he must manifest his dominion over it. We think the levy was, as made on the 31st of July, so far as concerns the manner of making it, valid. 2 Freeman on Executions, p. 1448, § 260, and cases cited. 23 C. J. p. 435, § 224, et seq., and authorities cited therein.

The real and important question for decision is whether the statutory lien arising out of the delivery of the execution to the sheriff was lost by unreasonable delay in making the levy. Under the statute of this state an execution is a lien upon personal property of the judgment debtor from the time of the delivery of the writ to the sheriff for service. This lien, however, may be lost or displaced by an act of the judgment creditor indicating that the writ was procured, or is being used, as a security and not for satisfaction of the judgment. In Williams v. Mellor, 12 Colo. 1, 19 Pac. 839, there is a discussion of this question. The court there said: "When the execution in question came into the hands of the plaintiff in error, it became a lien upon the chattels of the said Walter; (judgment debtor) and a subsequent mortgagee of the said Walter would take subject to the existence of the lien thereon, unless the judgment creditor, Thomas, by some act of his, lost or waived his priority of lien. It is a well-settled principle of the law that a judgment creditor may waive or lose his priority of lien by refusal to enforce the same, thereby simply holding the lien as security for the collection of his debt."

In the Williams Case the execution was issued June 21. The chattel mortgage was executed on the same day but it was not filed for record until about two hours after the writ of execution was delivered to the sheriff. The mortgagees took possession of the mortgaged property June 26,

five days after the sheriff received the writ and they advertised a sale of the property for July 11. The sheriff made his levy of the writ upon the mortgaged property the same day, July 11, twenty days after he had received it. The court held that the lien of the execution was not displaced by the lien of the chattel mortgage because there was no unreasonable delay of the levy. The court, however, said what we think is controlling here under the facts of the instant case: "When an officer holds a process for a long period of time without enforcing the same, the presumption arises that he held it by direction of the plaintiff," and cites as authority a case from Ohio where the execution was held dormant for failure of the sheriff to make the levy under it for a period of 49 days after he had received the writ. In the Williams Case the sheriff made the levy 20 days after he received the writ, on the property included in the chattel mortgage which was executed and recorded only two hours after the writ came into the hands of the sheriff. In the instant case the sheriff did not make the levy until 90 days after it was received by him, the last day upon which it was valid, and as to a portion of the property seized he made the levy one day after the return day. If, as said in the Williams Case, the holding of the writ by the officer for a long period of time without enforcing it gives rise to the presumption that he held it by direction of the plaintiff for security or for any other reason, certainly the failure of the sheriff here to levy this execution for the period of 90 days, the last day upon which it was valid, and no levy thereunder after the 90 days could be made, gives rise to the same presumption. In other words, failure of the judgment creditor to cause the writ to be served until after the expiration of a reasonable time therefor, subordinates the execution lien to the lien of the chattel mortgage which was given by the judgment debtors who were in the possession of the property 62 days after the sheriff received the execution, and 28 days before there was any attempt to make a levy under it. The Williams Case is cited with approval, as to the loss of execution lien, in *Lewin v. Tellu-*

*ride Iron Works Co.,* 272 Fed. 590-595. In *Doyle v. Herod,*
9 Colo. App. 257, 47 Pac. 846, our Court of Appeals says:
"The duty of the officer receiving the writ is to execute it
without delay, and if, by any act of the judgment creditor,
the writ is held for a time unexecuted, or without attempt
at execution, it is, during that time, inoperative as against
other creditors." In *Ankele v. Elder,* 19 Colo. App. 330, 75
Pac. 29, 74 days elapsed after the sheriff received the writ
before he attempted to execute it. In that case there was
evidence to warrant a finding that by reason of directions
to the sheriff by counsel for the owners of the judgment,
the latter were responsible for this long delay. In the
instant case a period of 90 days elapsed after the sheriff
received the writ and before he attempted to execute it.
In the Mellor Case it is said that, in the absence of any
explanation by the judgment creditor or his attorney, the
presumption is that the delay was due to them. There is
no explanation here by the judgment creditor or his attor-
ney for the unreasonably long delay.

There is an additional reason for reversing this judgment
in part. The sheriff sold some of the horses included in
the chattel mortgage that were not included in the first
levy. Even if these horses had been segregated from other
similar animals on the ranch at the time, as they were not,
no lien thereon was created, because the levy was not made
or completed until after the writ of execution had spent its
force. The only issue to be tried is as to the value of the
property converted.

This judgment was wrong and it must be reversed and
remanded with instructions to the trial court that if fur-
ther proceedings are had, they are to be restricted to the
issue of value as stated and must be consistent with the
views expressed in the opinion.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE SHEAFOR
concur.